## SPENCER et al. v. KANSAS CITY STOCK-YARDS CO.

(Circuit Court, W. D. Missouri, W. D. June 5, 1893.)

1. FEDERAL COURTS—JURISDICTION—DIVERSE CITIZENSHIP—DISTRICT OF RESIDENCE—EJECTMENT.

   Under section 8 of the judiciary act of 1875, which is continued in force by the act of 1887–88, an action of ejectment may be maintained in a federal court, in the district where the land is situated, (the citizenship of the parties being diverse,) even though it is not the district of the residence of either plaintiff or defendant.

2. SAME—SERVICE OF PROCESS.

   A corporation chartered by another state, but having, in the district where suit is brought, a place of business, in charge of an agent designated to receive service, as required by the state statute, is "found" within the district, within the meaning of said section 8; and there is no occasion for service by publication, under the further provisions of that section.

At Law. Action in ejectment by Frank M. Spencer and others against the Kansas City Stock-Yards Company. On motion to quash the service and dismiss the action. Service quashed, but motion to dismiss denied.

Johnson & Lucas and H. M. Meriwether, for plaintiffs.
Pratt, Ferry & Hagerman, for defendant.

PHILIPS, District Judge. This is an action of ejectment instituted in this court. One of the plaintiffs is a resident of the state of Texas, two of them are residents of the state of Kentucky, one is a resident of the state of California, and three are residents of the state of Missouri. The defendant is a corporation of the state of Kansas, but has a place of business, in charge of its agents and servants, in this state and district. The defendant appears for the purpose, only, of this motion, and moves the court to quash

the service and dismiss the action for the reasons—First, that the court has no jurisdiction of the case; and, second, that the defendant is not a resident of Missouri, and part of the plaintiffs are nonresidents of the state, and the suit was not brought in the district of the residence of either the plaintiffs or the defendant; and because no substituted service can be had. It appears from the evidence in the case that the defendant company, while incorporated under the laws of the state of Kansas, and therefore a citizen of that state, maintains its stock yards both in the state of Kansas and in Kansas City, Mo., and that at the time of the institution of this suit it had, and has ever since kept, a general manager in charge of its office in Kansas City, Mo., in compliance with the requirements of the statute laws of the state of Missouri. The property in question is occupied by the defendant as a stock yard.

By section 8 of the act of March 3, 1875, determining the jurisdiction of circuit courts of the United States, it is provided—

"That when in any suit, commenced in any circuit court of the United States, to enforce any legal or equitable lien upon, or claim to, or to remove any incumbrance or lien or cloud upon, the title to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of, or found within, the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer or demur by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be; or where such personal service upon such absent defendant or defendants is not practicable, such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks; and in case such absent defendant shall not appear, plead, answer or demur, within the time so limited, or within some further time, to be allowed by the court, in its discretion, and upon proof of the service or publication of said order, and of the performance of the directions contained in the same, it shall be lawful for the court to entertain jurisdiction and proceed to the hearing and adjudication of such suit in the same manner as if such absent defendant had been served with process within the said district; but said adjudication shall, as regards said absent defendant or defendants without appearance, affect only the property which shall have been the subject of the suit, and under the jurisdiction of the court therein, within such district. And when a part of the said real or personal property against which such proceedings shall be taken shall be within another district, but within the same state, said suit may be brought within either district of said state."

The principal contention of counsel for defendant is that this section does not give jurisdiction as to the subject-matter, but only provides for substituted service in cases where jurisdiction, or the right to bring the suit, is given by other sections of the statute; and that as the act of 1887 does not, in terms, confer jurisdiction in the action of ejectment, and other proceedings in rem affecting real estate, except where the diverse citizenship exists, no inference can arise from section 8 that it was intended to confer jurisdiction on the United States court from the mere fact of the situs of the property, and that, therefore, the substituted service provided for in section 8 could have no application to a case which cannot be brought in the United States court by original process. There has been discussion of this statute, with diverse

conclusions,—one under the act of 1872, (Brigham v. Luddington, 12 Blatchf. 237;) the other under the acts of 1875 and 1887, (Ames v. Holderbaum, 42 Fed. Rep. 341.) In the Brigham Case it was held that, where the plaintiff and one of the defendants were citizens of the same state, it would defeat the jurisdiction of the court. In the Ames Case the plaintiff was a citizen of the state of Illinois, two of the defendants were citizens of the state of Ohio, and one defendant was a citizen of the state of Iowa,—the situs of the property sought to be foreclosed, and the place of the venue. In this latter case it will be observed neither of the defendants was a resident of the same state with the plaintiff; and it was held that under said section 8 the nonresident defendants could be brought into the court in Iowa by means of the substituted service of process provided for under said section.

Without undertaking any review of these decisions by two learned judges, I will, with some diffidence, add some thoughts which seem to me tenable, as applied to the facts of the case in hand:

By the first section of the act of 1875 it was provided—

"That no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving such process or commencing such proceeding." etc.

The re-employment of the term "found" in section 8 is to be understood in the sense in which it was employed in section 1. It contemplates a proceeding against a defendant in a district whereof he is not an inhabitant, and provides for the substituted service of process upon him to bring him into the forum of litigation, for the purpose of binding the res, unless he is "found" therein, in which case he may be served just as he could be under section 1. The first section applied more especially to proceedings in personam, or at least where, in addition to the judgment in rem, a personal judgment over might be rendered against the defendant. The other (section 8) applies solely to actions in rem, and in districts whereof the defendant is not a resident. While in the amendatory act of 1887–88 the words, "in which he shall be found," etc., are omitted from the first section, so that suits wherein jurisdiction depends upon diverse citizenship must be brought in the district wherein the defendant resides, or in which the plaintiff resides, the act continues in force section 8 of the act of 1875, and, of course, with all it expressed or implied in the original act. And while the act of 1887 was designed to restrict, rather than enlarge, the jurisdiction of United States circuit courts, it leaves unimpaired the original scope of section 8, for by section 5 of the amendatory act of 1887 said section is declared to be unaffected.

For what purpose was this section inserted? Some special office must be assigned it. It should receive that construction which will best effectuate and carry out the legislative intent. It first appeared in the act of 1872, (17 Stat. 196–198.) In that act it was limited in its application to suits in equity. It seems to me that

an examination and understanding of the scope and object of the entire act of 1872 will serve to indicate the purpose of section 8. The act deals mainly with questions of practice, remedies, process, and procedure. Section 6, for example, provided that:

"In common-law causes in the circuit and district courts of the United States, the plaintiff shall be entitled to similar remedies, by attachment, or other process, against the property of the defendant, which are now provided by the laws of the state in which such court is held, applicable to the courts of such state," etc.

The preceding section (5) provided—

"That the practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes in the circuit and district courts, * * * shall conform, as near as may be, to the practice, pleading and forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such circuit or district courts are held, any rule of court to the contrary notwithstanding."

Following up the same policy and purpose, section 13, which has become section 8, was inserted. What was that policy and purpose? Manifestly, it was to assimilate, as far as may be, the practice, proceedings, and remedies, in the specified particulars, in the federal courts to those of the state courts. It was doubtless well known to the lawyers in congress that in actions in rem, affecting in any manner title to real property, the assertion of claims, legal or equitable, to it, as also the enforcement of liens against it, the situs of the property drew to it the venue of litigation; and where the defendant in such actions had his residence or citizenship in a state different from that where the property is situated, or could not be found in the state, the state statutes provided for what is known as "substituted service of process" on him, to bring him into the forum of litigation. Unless it was the mind and purpose of the legislative body to give jurisdiction to the United States courts to proceed in the forum where the real property is situated, although the defendant may reside elsewhere, it is difficult to perceive what was its object, or to give to section 8 any practical office. It is wholly unnecessary where the defendant is a citizen of the same district where the res is located. The plaintiff, being a nonresident of the state, could sue, in such instance, under the first section of the acts. This construction, in my humble judgment, involves no conflict with section 1, which makes jurisdiction to depend on the diverse citizenship of all the plaintiffs from that of the defendant. Here all the plaintiffs are citizens of states other than that in which the defendant resides. But it does differ from the other requirement of section 1 in respect of the suability of the defendant outside of the district of his residence. But there is no repugnant contradiction in the two provisions, when the object or legislative intent is kept in mind.

I am also unable to accept the contention of the learned counsel for defendant that the action of ejectment is not within the terms or meaning of said section 8. It is true that under the state statute the action is largely possessory, and is to be instituted against

the tenant in possession, with permission to the owner, on motion, to come in and defend his title. The term, "any legal claim to real property," it must be conceded, was employed by the framer of the act in its general, comprehensive sense. The action of ejectment is a legal claim to real property; and while, under the statute, the right of possession is in issue, as its object, it often involves in the inquiry the question of title. Both in text-books and adjudications the phrase "possessory title" is of common use. In framing a statute, federal in its operation, and as extensive as the federal Union, language of a general character is necessarily employed to make it applicable to the possible diversified claims to realty liable to arise. No reason is apparent, in view of the scope and purpose assigned to the operation of said section, and the scheme of the entire act, why congress should have excluded therefrom so important an action as the claim to the possession of real property.

Although, by the statute of the state, the defendant, as an act precedent to its right to conduct its business in this state, is required to keep and maintain an agent in charge of its principal office in this state, on whom service of process may be had, for the purpose of litigating a right or claim against the corporation, this does not affect or change the citizenship of the corporation. It still continues, within the meaning of the federal judiciary act, to be a citizen of the state of Kansas, where its charter was granted. Such agent, in a case like this, would not, in my opinion, be the terre-tenant in possession of the property, against whom the action might be lodged. In the employ of this corporation, conducting its yards, are probably a large number of men. Could it be required that process should be served on the whole number? If on less than the whole, on how many, and on which particular person? These men, whether one be principal manager, and others ordinary laborers, as the term goes, are each and all employes of the corporation. A corporation—this legal entity—occupies a tract of land only by and through its servants. The possession of its employes is its possession. So it is well said:

"A servant or employe claiming no title or interest in himself, or any right to the possession, is not usually liable to an action of ejectment. Such an employe is not an occupant, within the meaning of the rules of law governing ejectments. He is acting under the control of another, and it is only in another's right that he occupies the premises." Sedg. & W. Tr. Title Land, § 242.

While the state statute authorizes the service of process on the designated agent of the corporation in the state, the effect of such service is to bring into the forum the corporation itself, and not the agent or employe. In view, however, of the requirement of the state statute, and the fact that defendant, in obedience thereto, kept and maintained in this state and district, at the time of institution of suit, an agent on whom service could have been had, it seems to me it should be held that the defendant could have been "found within the district," within the meaning of said section 8.

Therefore the occasion did not arise for making the service in the state of Kansas on the corporation, as was done in this case. For this reason the motion, in so far as it asks to have the return of service set aside, is well taken, and the same is sustained.